## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

ANTONIO VASQUEZ ESCARCEGA,   )
                                )
        **Petitioner,**        )
                                )
**v.**                          )      **Case No. CIV-25-1129-J**
                                )
**SAM OLSON, et al.,**        )
                                )
        **Respondents.**     )

## REPORT AND RECOMMENDATION

Petitioner Antonio Vasquez Escarcega, a noncitizen[1] and Mexican national, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE").  United States District Judge Bernard M. Jones referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).  The Court set an expedited briefing schedule, and Respondents timely filed a Response, Doc. 13.  Petitioner did not file a Reply.  For the reasons set forth below, the undersigned recommends that the Court grant the Petition in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days or otherwise to release him if there is no hearing within that time.

---

[1] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'"  *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I.    **Background**

Petitioner entered the United States around 2005 without being inspected or admitted.  Pet. at 11; Resp. at 13.  He has resided in the United States continuously for more than twenty years, most recently in Broken Arrow, Oklahoma.  Pet. at 11.  On August 27, 2025, ICE apprehended Petitioner in Tulsa, Oklahoma.  *Id.*  The same day, Petitioner was issued a Notice to Appear with the immigration court.  Resp. at 13.  Petitioner's removal proceedings remain ongoing while he is detained.  *Id.*

After Petitioner's arrest, ICE placed him into removal proceedings before the El Paso Immigration Court in Texas, pursuant to 8 U.S.C. § 1229a.  Pet. at 11.  Petitioner is charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  Pet. at 11; Resp. at 13.  After his arrest, ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.  Pet. at 12.  Before Petitioner could request a bond redetermination hearing before an Immigration Judge ("IJ"), the Board of Immigration Appeals ("BIA") issued a precedential decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which binds IJs to a holding that those who entered the country without admission or parole are ineligible for a bond hearing.  Pet. at 12.  Accordingly, "Petitioner is subject to mandatory detention" under 8 U.S.C. § 1225(b)(2)(A).  Pet. at 2.  When Petitioner filed his Petition, he was detained at the Cimarron Correctional Facility in Cushing, Oklahoma.  *Id.* at 11.

## II.    **Petitioner's Claims**

Petitioner asserts two counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges that his continued detention under § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to those, like Petitioner, who previously entered the country and have been residing in the United States before being apprehended and placed in removal proceedings. Pet. at 12-13.

- **Count II: Violation of Due Process.** Petitioner alleges that his continued detention without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process. *Id.* at 13.

Petitioner asks the Court to "issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within five days." *Id.* at 14 (citation modified).

## III.   Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.   Analysis

### A.   The Court has jurisdiction to consider the Petition.

Based on specific provisions of the INA at issue, Respondents argue this Court lacks jurisdiction to consider Petitioner's claims. Resp. at 14-17. In recent weeks, such jurisdictional arguments have been rejected by multiple district courts throughout the country. *See, e.g., Hasan v. Crawford*, No. 25-CV-1408, --- F.3d. Supp. ---, 2025 WL 2682255, at *3 n.7 (E.D. Va. Sep. 19, 2025) ("Federal courts throughout the country have

3

similarly found that these jurisdiction-stripping provisions do not deprive the federal courts of jurisdiction to review a noncitizen's challenge to the legality of his detention." (collecting cases)).  The undersigned agrees with those courts that have found jurisdiction exists to consider arguments challenging detention in circumstances similar to Petitioner's.

### 1.    Sections 1252(a)(5) and 1252(b)(9)

Respondents first argue the Court lacks jurisdiction to consider the Petition because (1) the INA channels "claims related to removal orders" to a court of appeals rather than a district court, and (2) such claims include "the decision to charge and detain Petitioner under [8 U.S.C.] § 1225(b)(2)(A)."  Resp. at 14-15 (citing 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) (citation modified)).  Accordingly, Respondents argue that under § 1252(a)(5) and § 1252(b)(9), the decision to charge and detain Petitioner can "be reviewed by the appropriate court of appeals as part of an appeal of a final order of removal—but not this Court."  *Id.* at 15.

Several courts have recently rejected this jurisdictional argument for the fundamental reason that detention orders "are separate and apart from orders of removal." *Hasan*, 2025 WL 2682255 at *4 (citation modified).  Challenges to detention orders "are legal in nature and challenge specific conduct unrelated to removal proceedings." *Garcia Cortes v. Noem*, No. 25-CV-02677, 2025 WL 2652880, at *2 (D. Colo. Sep. 16, 2025) (citing *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("Congress did not intend the zipper clause to cut off claims that have a tangential relationship with pending removal proceedings.  A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings." (citation

modified))); *Gutierrez v. Baltasar*, No. 25-CV-2720, 2025 WL 2962908, at *2-3 (D. Colo. Oct. 17, 2025) (rejecting jurisdictional argument, in part, because the petitioner's claims challenging detention under 8 U.S.C. § 1225 rather than § 1226 due to a change in policy was a challenge to specific conduct unrelated to removal proceedings).

The Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018), recognized the limited circumstances where § 1252(b)(9) would bar a district court's jurisdiction. The Court in *Jennings* noted the noncitizens in that case "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Id.*

Here, like many recent habeas cases by noncitizens challenging mandatory detention under § 1225(b)(2)(A), "Petitioner does not challenge any removal order because no order of removal has yet been entered against him. Rather, he challenges the constitutionality and legality of his detention during the period before his removal hearing." *S.D.B.B. v. Johnson*, No. 25-CV-882, 2025 WL 2845170, at *3 (M.D.N.C. Oct. 7, 2025). As such, "§ 1252(b)(9) does not deprive the court of jurisdiction." *Id.* This interpretation of § 1252(a)(5) and § 1252(b)(9) tracks the same recent analysis of several district courts. *See, e.g.*, *Caballero v. Baltasar*, No. 25-CV-03120, 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2025) (ruling § 1252(b)(9) does not present a jurisdictional bar to a noncitizen challenging "the legality of his continued detention without a bond hearing"); *Hasan*, 2025 WL 2682255, at *4 ("Section 1252(b)(9) does not insulate detention orders from judicial

review because they are separate and apart from orders of removal." (citation modified));

*Hernandez Marcelo v. Trump*, No. 25-CV-0094, --- F. Supp. 3d ----, 2025 WL 2741230,

at *6 (S.D. Iowa Sep. 10, 2025) (concluding § 1252(a)(5) and § 1252(b)(9) are inapplicable

because the habeas petitioner was challenging his detention without a bond hearing, not an

order of removal); *Jose J.O.E. v. Bondi*, No. 25-CV-3051, --- F. Supp. 3d ----, 2025 WL

2466670, at *7 (D. Minn. Aug. 27, 2025) (same) (collecting cases)). Notably, Respondents

provided no example of a recent district court decision adopting their view.

The undersigned agrees with the prevailing analysis from other recent district courts

and concludes that § 1252(a)(5) and § 1252(b)(9) do not deprive the Court of jurisdiction.

### 2.    Section 1252(g)

Respondents also argue that the INA limits a district court's jurisdiction to consider

"any cause or claim by or on behalf of any alien arising from the decision or action by

[DHS] to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any

alien under this chapter."  Resp. at 15 (quoting 8 U.S.C. § 1252(g) (emphasis added by

Respondents)).  Respondents assert that "the bar on considering the commencement of

proceedings includes a bar on considering challenges to the *basis on which* DHS chooses

to commence removal proceedings." *Id.* (citation modified).

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999),

the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to "three

discrete actions"—the commencement of removal proceedings, adjudication of removal

proceedings, and execution of removal orders.  The Supreme Court found it "implausible

that the mention of three discrete events along the road to deportation was a shorthand way

of referring to all claims arising from deportation proceedings." *Id.* More recently, in *Jennings*, the Court reaffirmed this narrow reading, explaining that *Reno* "did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." 583 U.S. at 294. Instead, the statutory language refers "to just those three specific actions themselves." *Id.*

Though § 1252(g) indeed imposes a jurisdictional bar on a court's ability to review certain habeas petitions, the restrictions are to be read narrowly. *See, e.g., Reno*, 525 U.S. at 487 (referencing the Court's "narrow reading of § 1252(g)"); *Gutierrez*, 2025 WL 2962908, at *3 ("Section 1252(g) imposes a narrow judicial bar to a federal court's review of 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'" (quoting 8 U.S.C. § 1252(g)); *Hasan*, 2025 WL 2682255, at *4 ("Section 1252(g) has a narrow reach."); *Garcia Cortes*, 2025 WL 2652880, at *1 ("These statutory bars are read narrowly."); *Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 2604573, at *3 (S.D. Fla. Sep. 9, 2025) ("The Supreme Court has given § 1252(g) a 'narrow reading,' emphasizing that it does not cover 'all claims arising from deportation proceedings' or impose 'a general jurisdictional limitation.'" (quoting *Reno*, 525 U.S. at 482, 487)).

Here, Petitioner does not challenge the commencement of removal proceedings, the adjudication of removal proceedings, or the execution of removal orders. Instead, he challenges "the narrow legal questions of whether [his] detention under 8 U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary

detention framework." *Gutierrez*, 2025 WL 2962908, at *3.  As such, Petitioner's claims

fall outside the narrow jurisdictional limitations of § 1252(g) and, accordingly, § 1252(g)

does not deprive the Court of jurisdiction.  This conclusion is consistent with many district

courts that have recently addressed this jurisdictional challenge from the government.  *See,*

*e.g., id.* (finding § 1252(g) did not strip the court of jurisdiction to consider petitioner's

challenge to his detention under § 1225 rather than § 1226); *S.D.B.B.*, 2025 WL 2845170,

at *3 (same); *Hasan*, 2025 WL 2682255, at *4 (same); *Garcia Cortes*, 2025 WL 2652880,

at *1 (same); *Grigorian*, 2025 WL 2604573, at *4 (same).

Respondents cite only one decision, from the District of Minnesota, that has

squarely ruled that § 1252(g) bars a district court's jurisdiction to consider a petitioner's

challenge to detention.  *See S.Q.D.C. v. Bondi*, No. CV 25-3348, 2025 WL 2617973, at *3

(D. Minn. Sept. 9, 2025).  That decision "appears to represent an extreme minority position,

both in its own district and nationally."  *Gonzalez Martinez v. Noem*, No. EP-25-CV-430,

2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *see also Belsai D.S. v. Bondi*, No. 25-

CV-3682, 2025 WL 2802947, at *5 n.3 (D. Minn. Oct. 1, 2025) ("respectfully disagree[ing]

with the conclusion reached by the Court in *S.Q.D.C.*").[2]

---

[2] The district court in *S.Q.D.C.* relied on *Alvarez v. U.S. Immigr. & Customs Enf't*, 818
F.3d 1194, 1203 (11th Cir. 2016).  *S.Q.D.C.*, 2025 WL 2617973, at *3.  Respondents
likewise rely on *Alvarez* to argue that "the bar on considering the commencement of
proceedings includes a bar on considering challenges to the *basis on which* DHS chooses
to commence removal proceedings."  Resp. at 15 (citation modified).  Not only is *Alvarez*
distinguishable on its facts from those here, but district courts considering detention orders
have also recently disagreed with jurisdictional arguments relying on *Alvarez*.  *E.g., Avila
v. Bondi*, No. CV 25-3741, 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025); *Belsai D.S.*,

### 3.    Conclusion

The undersigned concludes that neither § 1252(a)(5), § 1252(b)(9), nor § 1252(g) bars this Court from jurisdiction to consider Petitioner's challenge to his detention.

### B.    Section 1226(a) applies to Petitioner's detention.

Petitioner argues he is being held in violation of the INA and 8 U.S.C. § 1225(b)(2) does not apply to him because he has "already entered and [was] residing in the United States at the time [he was] apprehended." Pet. at 11. According to Petitioner, his continued detention under § 1225(b)(2) is unlawful and he is entitled to a bond hearing under § 1226(a)—as a noncitizen who previously entered the country and has been residing in the United States before being apprehended and placed in removal proceedings by ICE. Pet. at 12-13.

Respondents contend that Petitioner is an "applicant for admission" and therefore properly detained under § 1225(b)(2)(A). Resp. at 17. That is, because Petitioner did not enter the country lawfully and has not offered to voluntarily depart, he is still considered an "applicant for admission" or "seeking admission" under § 1225. Resp. at 19. Further, Respondents claim (1) § 1226(a) is reserved for those who do not fall within the confines of § 1225(b)(2)(A), namely, noncitizens who entered the country lawfully, and (2) any overlap between the two provisions does not undermine ICE's interpretation of the two statutes. *Id.* at 22-23.

---

2025 WL 2802947, at *5 n.3; *Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 1895479, at *4-5 (S.D. Fla. July 8, 2025).

If Petitioner is an "applicant for admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing. *See* Pet. at 3; Resp. at 7-8. If he is not an "applicant for admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing. The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue. The undersigned agrees with the great weight of authority and finds that Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A). As such, Petitioner is entitled to a bond redetermination hearing.

### 1.    Statutory interpretation of § 1225(b)(2)(A) and § 1226(a)

When interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (citation modified). "So when deciding whether the language is plain, the Court must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified).

Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). As relevant here, § 1225(b)(2)(A) allows

an examining immigration officer to detain "an applicant for admission" under § 1229a if the noncitizen "seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Section 1226(a), on the other hand, authorizes detention of a noncitizen "on a warrant issued by the Attorney General" pending removal proceedings. 8 U.S.C. § 1226(a) (citation modified).

At issue is whether "an applicant for admission"—that is, "an alien present in the United States who has not been admitted"—includes a noncitizen like Petitioner who intentionally avoided lawful entry. *See* 8 U.S.C. § 1225(a)(1). The statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the noncitizen has already entered and spent many years residing in the United States. Even when statutory terms are unambiguous, context still matters. *See United States v. Bishop,* 412 U.S. 346, 356 (1973) ("Context is important in the quest for [a] word's meaning." (citation modified)); *United States v. Ceballos-Martinez,* 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that it chose to use them"). Further, "it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation modified). When considering the overall context of § 1225, the undersigned concludes the statute limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).

At the outset, giving effect to each clause and word of a statute includes an analysis of the statute's title.  "A title is especially valuable where it reinforces what the text's nouns and verbs independently suggest."  *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation modified).  Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added).  The use of "arriving" to describe noncitizens indicates that the statute governs the entrance of noncitizens to the United States.

This reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to let noncitizens into the country.  In fact, the subheading for § 1225(b)(2) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present.   Section 1225(d) is labeled "Authority Relating to Inspections" and describes the powers of immigration officers to search and detain vessels and "arriving aliens."   *See* 8 U.S.C. § 1225(d)(1) (authorizing immigration officers to "board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"); *id.* § 1225(d)(2) (authorizing immigration officers to detain an "arriving" noncitizen and incoming vessel or aircraft and to deliver the "arriving" noncitizen for inspection).  Section 1225 also explicitly addresses its effect on "stowaways" and "crewmen," words that likewise suggest arrival at a border or port of entry.  *See id.* § 1225(a)(2) ("An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted shall be ordered removed upon inspection by an immigration officer."); *id.* § 1225(a)(3) ("All aliens (including alien crewmen) who are

applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.").

Further, § 1225's place in the overall statutory scheme supports the undersigned's reading. *See King*, 576 U.S. at 486 (holding that courts are meant to "construe statutes, not isolated provisions" (citation modified)). That Congress separated removal of "arriving aliens" from its more general section for "Apprehension and detention of aliens" in § 1226, strongly implies that Congress enacted § 1225 for a specific, limited purpose. Whereas § 1225 governs removal proceedings for "arriving aliens," § 1226(a) serves as a catchall. As the Supreme Court in *Jennings* explained, § 1226(a) is the "default rule" and "applies to aliens already present in the United States." 583 U.S. at 288, 303.[3] The inclusion of both provisions in the overall statute is likely no coincidence, but rather a way for Congress to delineate between the specified categories of § 1225 and the more general provision of § 1226(a), which captures noncitizens who fall outside of § 1225's specificity.

---

[3] Both Petitioner and Respondents argue that *Jennings* supports their position. Pet. at 11; Resp. at 18. The Court in *Jennings*, however, did not rule on whether non-admitted or inadmissible noncitizens were governed by § 1225(b)(2)(A) or § 1226(a). Accordingly, the undersigned takes the same approach as other courts that have recently addressed this issue and cites *Jennings* for its acknowledgement that § 1226(a) is the default rule but does not make a recommendation based on *Jennings*. *See, e.g., Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 n.4 (E.D. Mich. Sep. 9, 2025) ("The Court cites *Jennings* because it acknowledges § 1226(a) as the default rule. But the Supreme Court did not rule on whether non-admitted or inadmissible aliens fell within boundaries of § 1226(a) as opposed to § 1225(b)(2)(A)."); *S.D.B.B.*, 2025 WL 2845170, at *5 ("On the other hand, § 1226(a) sets out the 'default rule' for detaining and removing aliens 'already present in the United States.'" (quoting *Jennings*, 583 U.S. at 303)).

After considering the text and statutory framework, the undersigned concludes the terms "applicant for admission" and "seeking admission" in § 1225(b)(2) do not cleanly apply to noncitizens like Petitioner. "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use of the present participle in § 1225(b)(2)(A) implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero*, 2025 WL 2977650, at *6 (citation modified). In contrast, Petitioner has resided in the United States continuously for over twenty years, never sought admission, and was not arrested when attempting to cross the border or pass through a port of entry illegally. Pet. at 11-12. "Simply put, noncitizens who are just 'present' in the country, who have been here for years upon years and never proceeded to obtain any form of citizenship, are not 'seeking' admission under § 1225(b)(2)(A)." *Caballero*, 2025 WL 2977650, at *6 (citation modified). Ultimately, a textual analysis of the immigration framework suggests Petitioner's circumstances align with § 1226(a), not § 1225(b)(2)(A). But there is more.

### 2.    Legislative history and recent amendment

The legislative history and recent amendment of § 1226 also indicate the statute applies to noncitizens who reside in the United States but previously entered without inspection. First, § 1226(a)'s predecessor statute, 8 U.S.C. § 1252(a)(1),

> governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability any noncitizen may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding

against a noncitizen already physically in the United States.'"). This predecessor statute, like Section 1226(a), included discretionary release on bond. *See* § 1252(a)(1) (1994) ("Any such noncitizen taken into custody may, in the discretion of the Attorney General be continued in custody or be released under bond."). Upon passing [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996], Congress declared that the new Section 1226(a) "restates the current provisions in the predecessor statute regarding the authority of the Attorney General to arrest, detain, and release on bond a noncitizen who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same).

*Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (citation modified);

*see also Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich.

Sep. 9, 2025) ("If § 1226(a) adopted the predecessor[] [statute]'s authority to release

noncitizens unlawfully present in the United States on bond, then [petitioner] is entitled to

discretionary release on bond as well.").

In addition, and contrary to Respondents' assertions, Congress' recent amendment

to § 1226 renders the government's interpretation of § 1225(b)(2)(A) superfluous. Earlier

this year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat.

3 (2025). The Laken Riley Act added § 1226(c)(1)(E), which mandates detention for

noncitizens who

- are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation) and

- have been arrested for, charged with, or convicted of certain crimes.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

15

Considering that § 1182(a)(6)(A)(i) specifically refers to "alien[s] present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the new statutory exception would be superfluous if § 1225(b)(2) already authorized their mandatory detention. That is, because an "alien present in the United States" without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (citation modified)). District courts have noted that adoption of Respondents' interpretation "would largely nullify a statute Congress enacted this very year and must be rejected." *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citation modified)).

The undersigned's recommended interpretation is consistent with recent holdings of numerous district courts that have ruled on this exact issue. *See, e.g., Menjivar Sanchez v. Wofford*, No. 1:25-cv-01187, 2025 WL 2959274, at *5 (E.D. Cal. Oct. 17, 2025) ("The third problem with the government's argument is that application of section 1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent amendment to section 1226(c)."); *Alvarez Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025) ("If Respondents' interpretation of section 1225 is correct—that the mandatory detention provision in section 1225(b)(2)(A) applies to all noncitizens present in the United States

16

who have not been admitted—then Congress would have had no reason to enact section 1226(c)(1)(E).”); *Alejandro v. Olson*, No. 25-cv-02027, 2025 WL 2896348, at *8 (S.D. Ind. Oct. 11, 2025) (“Under Respondents’ expansive interpretation of § 1225, the amendment would have no purpose.  Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act.”); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *10 (E.D.N.Y. Oct. 6, 2025) (same); *Quispe v. Crawford*, No. 25-cv-1471, 2025 WL 2783799, at *5 (E.D. Va. Sep. 29, 2025) (same); *Jimenez v. FCI Berlin, Warden*, --- F. Supp. 3d ---, 2025 WL 2639390, at *9 (D.N.H. Sep. 8, 2025) (same)  *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, *12 (D. Minn. Aug. 15, 2025) (same); *Gomes*, 2025 WL 1869299, at *6-7 (same).

### 3.    BIA’s current and historical interpretations of § 1225(b)(2)(A) and § 1226(a)

On September 5, 2025, the Board of Immigration Appeals (“BIA”) issued a precedential decision holding that an immigration judge lacks authority to consider a bond request for any person who is present in the United States without admission, treating such person as an applicant for admission and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025). The BIA in *Hurtado* concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for longer than two years without apprehension.  *Id.* at 229.

The undersigned reaches the opposite conclusion from the BIA's statutory analysis in *Hurtado*. Notably, this Court is not bound by the BIA's interpretation of § 1225(b)(2)(A). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("Courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." (citation modified)). In *Hurtado*, the BIA characterized as a "legal conundrum" the idea that a noncitizen's continued unlawful presence means they are not "seeking admission." 29 I. & N. Dec. at 221. However, a noncitizen's continued presence cannot constitute "seeking admission" when that noncitizen *never attempted* to obtain lawful status. This is especially true in light of § 1225's statutory context. The BIA also found that § 1225(b)(2)(A) does not render superfluous the Laken Riley Act. *Hurtado*, 29 I. & N. Dec. at 222. Considering, however, that both § 1225(b)(2)(A) and § 1226(c)(1)(E) mandate detention for inadmissible citizens, whether one includes additional conditions for such detention does not alter the redundant impact.

The BIA's decision in *Hurtado* reflects a sharp pivot from longstanding immigration practice and policies. For almost three decades, most noncitizens who entered without inspection were placed in standard removal proceedings and received bond hearings, unless subject to an exception. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." (citation modified)). The decades of ICE practices lend

18

support to Petitioner's entitlement to a bond redetermination hearing under § 1226(a) "because the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (citation modified).  Respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

Accordingly, the government's historical application of immigration laws also supports the undersigned's conclusion that § 1226(a) applies to Petitioner.  Again, this analysis aligns with numerous courts that have recently addressed this issue.  *See, e.g., Jiménez García v. Raybon*, No. 25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (finding that "ICE's decision to upend 30 years of reasoned statutory interpretation is not persuasive"); *Sabi Polo v. Chestnut*, No. 25-CV-01342, 2025 WL 2959346, at *11 (E.D. Cal. Oct. 17, 2025) ("Accordingly, the Court finds the well-reasoned decisions of the many district courts that have rejected the Government's expansive view of 1225(b)(2) far more persuasive than the new BIA ruling, a ruling at odds with its prior decisions and DHS's actions over the past thirty years." (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *12 (N.D. Cal. Sep. 12, 2025)).

### 4.    Conclusion

In sum, the undersigned is not persuaded by BIA's newfound statutory interpretation or Respondents' arguments and instead agrees with the myriad district courts that have recently applied § 1226(a) to govern detention of noncitizens like Petitioner. Respondents' arguments and BIA's decision to pivot from decades of consistent statutory

interpretation and to mandate Petitioner's detention under § 1225(b)(2)(A) are contrary to nearly every court that has recently addressed this question of statutory interpretation. The parties have not cited, and the undersigned has not identified, any relevant cases in the Western District of Oklahoma, but numerous district courts around the country have come to the same conclusion.

As a starting point, district courts within the Tenth Circuit have uniformly applied § 1226(a) to noncitizens living in the United States who were not apprehended at the border. *See, e.g.*, *Caballero v. Baltazar*, No. 25-CV-03120, 2025 WL 2977650, at *8 (D. Colo. Oct. 22, 2025) ("The Court joins the numerous courts across the country that have held that [noncitizens not apprehended at the border, who have been present in the United States for many years without lawful status] are subject to the discretionary detention framework of § 1226(a)."); *Gutierrez v. Baltasar*, No. 25-CV-2720, 2025 WL 2962908, at *4-5 (D. Colo. Oct. 17, 2025) (finding that "Petitioner is likely to succeed on the merits of his claims that he is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention authority and should be subject to 8 U.S.C. § 1226(a)'s discretionary scheme," and respondents had "readily admit[ed] that other district courts that have considered this same or similar issue 'have concluded that aliens who enter without inspection and then reside in the United States fall within the scope of Section 1226(a) rather than Section 1225(b)(2)(A)'"); *Salazar v. Dedos*, No. 25-cv-00835, 2025 WL 2676729, at *4 (D.N.M. Sep. 17, 2025) (holding that "once a noncitizen is within the United States, § 1226 generally governs the process of arresting and detaining these noncitizens pending their removal," which "is consistent with the plain text of §§ 1225 and 1226, traditional canons of statutory

construction, the statute's legislative history, and longstanding agency practice" (citation modified)).

Further, in the last few weeks alone, several district courts around the country have consistently applied § 1226(a) to govern detention proceedings for noncitizens like Petitioner.[4] *See, e.g., Jiménez García*, 2025 WL 2976950, at *4 ("To this Court, there is simply no question that § 1226(a)—not § 1225(b)(2)(A)—applies to noncitizens such as [petitioner] who have resided in the United States for many years and were not apprehended while arriving at the border."); *Sabi Polo*, 2025 WL 2959346, at *11 ("This Court . . . joins the numerous other district courts that have rejected the government's recent interpretation of the relationship between § 1225 and § 1226."); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of § 1225(b)(2) and the term 'seeking admission.'"); *Padron Covarrubias v. Vergara*, No. 25-CV-112, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025) ("Along with most other courts that have considered this issue, the Court finds that [petitioner] is not properly detained without a bond hearing under Section 1225, and instead, Section 1226 applies."); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As

---

[4] Just yesterday, six different district courts uniformly ruled that § 1226(a) governs detention for noncitizens like Petitioner. *See Escobar v. Perry*, No. 25cv758, 2025 WL 3006742, at *13 (E.D. Va. Oct. 27, 2025); *Velasquez v. Noem*, No. GLR-25-3215, 2025 WL 3003684, at *7 (D. Md. Oct. 27, 2025); *Tomas Elias v. Hyde*, No. 25-cv-540, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025); *Orellana v. Noem*, No. 25-cv-112, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025); *Gimenez Gonzalez v. Raycraft*, No. 25-cv-13094, 2025 WL 3006185, at *4 (E.D. Mich. Oct. 27, 2025); *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-2527, 2025 WL 3005346, at *4 (S.D. Cal. Oct. 27, 2025).

almost every district court to consider this issue has concluded, the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support finding that § 1226 applies to these circumstances." (citation modified)).

Numerous other courts have also come recently to the same conclusions about application of § 1226(a).  *See, e.g.*, *Cerritos Echevarria v. Bondi*, No. CV-25-03252, 2025 WL 2821282, at *4 (D. Ariz. Oct. 3, 2025) ("In recent months, many district courts across the country have grappled with the same issue, and it appears that all but one of them has rejected Respondents' position and concluded that an alien in Petitioner's situation (*i.e.*, an alien who entered the United States without inspection, never formally applied for admission, and has been living in the United States for years or decades) is entitled to a bond hearing under § 1226(a)."); *Quispe*, 2025 WL 2783799, at *6 ("For the above reasons, Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as at least thirty federal district courts around the country . . . have concluded when faced with habeas petitions from comparably situated petitioners."); *Vazquez v. Freeley*, No. 25-cv-01542, 2025 WL 2676082, at *16 (D. Nev. Sep. 17, 2025) ("In sum, the Court finds that the text and canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance, demonstrate that Petitioner is likely to succeed in establishing he and similarly situated noncitizens are subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A)."); *Pizarro Reyes*, 2025 WL 2609425, at *4-7 ("After reviewing the statutory text, the statute's history,

Congressional intent, and § 1226(a)'s application for the past three decades, the Court finds that [petitioner] falls within the confines of § 1226(a), and not § 1225(b)(2)(A).").

Finally, the undersigned has considered Respondents' citations to three recent cases[5] adopting their position that noncitizens like Petitioner are "applicants for admission" despite years residing in the United States. *See Vargas Lopez v. Trump*, No. 25CV526, --- F.3d. Supp. ---, 2025 WL 2780351, at *9 (D. Neb. Sep. 30, 2025); *Chavez v. Noem*, No. 5-CV-02325, --- F.3d. Supp. ---, 2025 WL 2730228, at *4 (S.D. Cal. Sep. 24, 2025); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. Jul 28, 2025). For the reasons previously discussed, the undersigned respectfully disagrees with the textual analysis and strained statutory interpretations by the three district courts. The undersigned instead agrees with the overwhelming number of courts that have recently addressed this question.

After carefully analyzing the statute's text, structure, history, and longstanding immigration practices, the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's detention. Further, the undersigned concludes that Petitioner is entitled under § 1226(a) to a prompt individualized bond hearing before a neutral IJ. *See, e.g., Alvarez Puga*, 2025 WL 2938369, at *5 (finding "that section 1226(a) and its implementing regulations govern [p]etitioner's detention, not section 1225(b)(2)(A)" and that petitioner

---

[5] Respondents also cite two Tenth Circuit cases for the proposition that a noncitizen is an applicant for admission whether he is arriving in the United States or is already present in the country without admission. *Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) and *Suarez-Tejeda v. United States*, 85 F. App'x 711, 712-13 (10th Cir. 2004). Both cases, however, are inapposite because the noncitizen petitioner had been stopped at the border and paroled into the United States. Accordingly, those cases are distinguishable on the facts and do not affect the undersigned's analysis.

"is entitled to an individualized bond hearing as a detainee under section 1226(a)"). Accordingly, the undersigned recommends that the Court grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

### C.    The Court should decline to address Petitioner's due process claim.

In his second habeas claim, Petitioner argues that his continued detention without a bond redetermination hearing violates his rights to due process. Pet. at 13. If the Court grants Petitioner's requested relief for a bond redetermination hearing under § 1226(a), the undersigned recommends that the Court follow an approach of other district courts and decline to decide the merits of the due process claim, and allow Petitioner to renew that claim if Respondents do not provide him with a bond hearing or release him within the ordered time. *See Pizarro Reyes*, 2025 WL 2609425, at *8 ("The Court will decline to decide the merits of [petitioner's] due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a)."); *see also Jiménez García*, 2025 WL 2976950, at *4 (same); *Alvarez Puga*, 2025 WL 2938369, at *6 (citing *Pizarro Reyes* and declining to decide the merits of petitioner's due process claim); *Buenrostro-Mendez*, 2025 WL 2886346, at *3 n.4 (same).[6]

---

[6] Respondents argue that Petitioner's due process claim insufficiently alleges facts to warrant habeas relief. Resp. at 27. Because the undersigned recommends that the Court grant relief under Petitioner's statutory claim and agrees that Petitioner's due process allegations are unclear and conclusory, this Report and Recommendation does not address the merits of any due process claim potentially raised by Petitioner.

**V.**     **Recommendation and Notice of Right to Object**

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court not later than November 4, 2025. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 28th day of October, 2025.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE